ORIGINAL

1   PRO SE                                  Amended Complaint
    Vilma Capco-Parenas
2   16-2130 Kuleana Street                            FILED IN THE
    Pahoa, HI 96778                         UNITED STATES DISTRICT COURT
3                                               DISTRICT OF HAWAII

4                                              MAR 3 1 2011

5                                          at 3 o'clock and 00 min. P M
                                              SUE BEITIA, CLERK
6
                        UNITED STATES DISTRICT COURT
7
                        FOR THE DISTRICT OF HAWAII
8

9   Vilma Capco-Parenas, an individual      Case No.: CV-11-00023 LEK KSC

10              Plaintiff,                   **COMPLAINT** FOR:

11                                           1. DECLARATORY RELIEF;
        v.                                   2. INJUNCTIVE RELEIF;
12                                           3. CONTRACTUAL BREACH OF GOOD
    Bank of New York, a Business Entity, form   FAITH FAIR DEALING;
13  unknown; Countrywide Home Loans, a Business  4. VIOLATIONS OF TILA;
    Entity, form unknown; Bank of America, a    5. VIOLATIONS OF RESPA;
14  Business Entity, form unknown; Western State  6. RECISSION;
    Mortgage dba Aloha Mortgage Solutions, a    7. UNFAIR AND DECEPTIVE ACTS AND
15  Business Entity, form unknown; MORTGAGE   PRACTICES (UDAP);
    ELECTRONIC REGISTRATION SYSTEMS, a     8. BREACH OF FIDUCIARY DUTY;
16  Business Entity, form unknown; and DOES 1-  9. UNCONSCIONABILITY;
    100 inclusive,                          10. PREDATORY LENDING;
17                                           11. QUIET TITLE
                Defendants,                  12. LACK OF STANDING (MERS);
18
                                             EXHIBIT "A"
19
                                             **Jury Trial Demanded**
20

21

22

23
                            **INTRODUCTION**
24
        COMES NOW the Plaintiff Vilma Capco-Parenas (hereinafter referred to as "Plaintiff" or
25
    "Borrower"), allege as follows:
26

27

28

**PARTIES**

1. At all times relevant herein, Plaintiff was over the age of eighteen and is and was a resident of the County of Hawaii, State of Hawaii. The real estate that is the subject of this litigation is 16-2130 Kuleana Street, Pahoa, HI 96778 (hereinafter referred to as "Subject Property").

2. Plaintiff purportedly entered into a loan repayment and security agreement on or about, May 22, 2007 with Defendant, Western State Mortgage dba Aloha Mortgage Solutions, which required Plaintiff to repay the loans in the amount of $184,800.00 and $46,200.00. The Plaintiff was approved for the loan in the amount of $184,800.00 on a Purchase ARM for 30 years with a 10 year interest only period. The Plaintiff was also approved for the loan in the amount of $46,200.00, a 15 year loan but amortized for 30 years.

3. Plaintiff is informed and therefore alleges that Defendant Countrywide Home Loans, a Business Entity, form unknown, is a corporation, authorized to do business in the State of Hawaii was the original mortgage lender for the loan.

4. Plaintiff is informed and therefore alleges that Defendant, Western State Mortgage dba Aloha Mortgage Solutions, a Business Entity, form unknown, is a corporation, authorized to do business in the State of Hawaii. Aloha Mortgage Solutions was the original broker. Aloha Mortgage Solutions is a servicing company and has no lack of standing to foreclose on the property of the Plaintiff.

5. Plaintiff is informed and therefore alleges that Defendant Countrywide Home Loans is a foreclosing party who has a lack of standing to foreclose on the plaintiff's property.

6. Plaintiff is informed and therefore alleges that Defendant, Countrywide Home Loans, a Business Entity, form unknown, is a corporation, authorized to do business in the State of Hawaii, whose business address is 745 Fort Street Mall, Suite 1001, Honolulu, HI 96813.

7.  Plaintiff is informed and therefore alleges that Defendant, Western State Mortgage dba Aloha Mortgage Solutions (hereinafter referred to as "Aloha Mortgage Solutions"), a Business Entity, form unknown, is a corporation, authorized to do business in the State of Hawaii, whose business address is 1880 Ala Moana Boulevard, Suite 409, Honolulu, HI 96815.

8.  Plaintiff is informed and therefore alleges that Defendant, Bank of America, a Business Entity, form unknown, has lack of standing to foreclose on the Plaintiff's property.

9.  Bank of New York, a Business Entity, form unknown, is the new assignee of the mortgage. Bank of New York, is authorized to do business in Texas, whose business address is 7105 Corporate Drive, Plano, TX 75024.     Bank of New York has lack of standing to foreclose on the Plaintiff's property due to questionable assignment of mortgage.

10.  Plaintiff is informed and therefore believe that Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (hereinafter referred to as "MERS"), a Business Entity, form unknown, is a corporation, authorized to do business in the State of Michigan. MERS is the original mortgage nominee/beneficiary on the loan, with a business address of, P.O. Box 2026, Flint, MI 48051.

11.  The Defendants (each of them named in paragraphs 1 through 8 above, shall collectively be referred to as "DEFENDANTS") named herein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiff's title thereto and as DOES I through 100 (hereinafter referred to as "UNKNOWN DEFENDANTS") are unknown to Plaintiff. Bank of America  and each of them claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to Plaintiff's title and their claims and each of them constitute a cloud on Plaintiff's title to the Subject Property. Plaintiff is informed and therefore believes and on that basis alleges that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged.  Plaintiff will seek leave

of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendant's when ascertained.

12.   Plaintiff is informed and therefore believe and on that basis allege that at all times mentioned herein, the UNKNOWN DEFENDANTS are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint.

13.   Plaintiff is informed and therefore alleges that each of said Defendants is and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed Defendants.

14.   Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

15.   Defendants, and each of them, failed to provide the requisite Federal forms and disclosures including but not limited to the Truth In Lending Act, Real Estate Settlement Procedures Act, Equal Opportunity Credit Act, Fair Lending/Fair Debt Collection Act as well as others.

16.   It is also the responsibility of the lender and brokers to verify that the borrower has the ability to repay the credit that has been extended. A departure from the fundamental principles of loan underwriting will form the basis of abusive lending.  Lending without a determination that a borrower can reasonably be expected to repay the loan from resources other than the collateral securing the loan, and relying  instead on the foreclosure value of the borrower's collateral to recover principal, interest and fees. The underwriting on this loan was severely flawed. There was no

determination of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

17.   As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with the Federal Truth In Lending Act (hereinafter referred to as "TILA") [15 U.S.C. §1601-16666j]; [24 C.F.R § 3500.1-3500.17]; the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA") [12 U.S.C. § 2601 et.seq.]; 24 Code of Federal Regulations § 3500.10; § 10241.3; Unfair and Deceptive Business Practices and Acts [UDAP Statutes]; among others.

## JURISDICTION

18.   The transactions and events which are the subject matter of this Complaint all occurred within the County of Hawaii, State of Hawaii.

19.   The Subject Property is located within the County of Hawaii, State of Hawaii.

## FACTUAL ALLEGATIONS

20.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

21.   For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home.   Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure.   The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance

and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

22.  The loan product sold to the Plaintiff in this case was exactly the kind of loan that has contributed to our national problem. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiff of this risk. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiff faces the potential of losing her home to the very entity and entities who placed her in this position.

23.  Further liability exists on the part of Aloha Mortgage Solutions because under the Federal Truth In Lending Act § 1640, if any violation by Aloha Mortgage Solutions that occurred (before its transfer of servicing rights to Countrywide Home Loans or any other alleged owner of the Deed of Trust after the date of origination of the Aloha Mortgage Solutions), were apparent on the face of the disclosures, then assignee liability exists. For example, in <u>Cazares v Pacific Shore Funding</u>, C.D. Cal. 1/ 3/2006, an assignee that actively participated in original lender's act and dictated loan terms may be liable under UDAP statutes. The purchase and/or receipt of the above referenced "closed" loan from any subsequent purchaser, All Including at a non-judicial foreclosure sale, do not absolve Countrywide Home Loans or Aloha Mortgage Solutions of liability for the numerous State and Federal violations that have occurred, and have placed Plaintiff in a prejudicial position in regard to his legal rights.

24. Each subsequent Defendant who has participated in, been assigned or been transferred Rights, or holds a position or interest under loan agreement, including Countrywide Home Loans and Aloha Mortgage Solutions, and MERS DEFENDANTS (hereinafter referred to collectively as "Defendants") failed to perform their due diligence in investigation the legal requirements that this loan should have been processed within. As a result, Defendants now hold an interest in a loan that was improperly handled from its inception.

25. The terms of the finance transaction with Aloha Mortgage Solutions are not clear or conspicuous, nor consistent, and are illegal, and include, for example, extremely high ratios with respect to Plaintiff's Income and Liabilities. Plaintiff was given a loan that was an inappropriate loan. The loan was more expensive in terms of fees, charges and or interest rates than alternative financing for which Plaintiff could have qualified. The terms of the loan given to the Plaintiff are such that she can never realistically repay the loan.

26. The fees for this loan were equally egregious. This loan required the Plaintiff to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

27. This loan has a Prepayment Penalty attaché which assures that the borrower will not sale the property of refinance the property before the lender has the opportunity to recoup the premium fees paid to the broker.

28. The failure to adequately underwrite this loan could be actionable under: Rescission Law for Fraud, Mistake, Undue Influence, Breach, Illegality Causes of Action could include: Lack of due diligence by the lender in approving the loan, Lack of Good Faith and Fair Dealings by the Lender, Fiduciary Duty by the Lender for doing a loan where it could lead to default and Unconscionability by the Lender for doing the loan.

29. Under the EOCA, a borrower is entitled to the same terms of credit issuance that another borrower of equal characteristics is entitled to.  Here, placed the Plaintiff into a loan that had a significantly higher interest rate than what was qualified for. This was a result of paying excessive costs and fees to Aloha Mortgage Solutions.

30. These acts of deception violate several statutes and is in essence creates an illegal loan. Further, this loan was underwritten without proper due diligence by Aloha Mortgage Solutions as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns nor verify income or employment.

31. In addition, and unbeknownst to Plaintiff, Aloha Mortgage Solutions illegally, deceptively and/or otherwise unjustly, qualified Plaintiff for a loan which Aloha Mortgage Solutions knew or should have known that Plaintiff could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only. Had Aloha Mortgage Solutions used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining the debt to income ratio, Plaintiff would not have qualified for the loan in the first place.  Consequently, Aloha Mortgage Solutions sold Plaintiff a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff.  Aloha Mortgage Solutions ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiff a deceptive loan product.

32. There was no determination of the ability of the borrowers to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

33.  Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants.

34.  This loan was a "stated income" loan wherein neither Aloha Mortgage Solutions nor Countrywide Home Loans was able to accurately or reasonably determine if the Plaintiff could qualify for the home loan.  This lack of diligence is the primary reason Plaintiff find herself in the position she does.  The Defendants herein were aware of this probable outcome. The Plaintiff was not.

35.  The Defendant's utilized excessive closing costs/fees that are actionable for treble damages pursuant to 12 U.S.C. §2607.  Those fees include, but are not limited to: Origination Fee, Discount Fee, Lender Loan Fee, Processing Fee, and Underwriting Fee.

36.  The purpose of entering into the above-described mortgage loan transactions was for the Plaintiff to eventually own the Subject Property.  That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' actions alleged herein.

37.  **An Expert, Certified, Forensic Audit** of the Plaintiff's loan documents revealed the following legal violations which were incurred during the handling and processing of Plaintiff's loan:

38.  Plaintiff is informed and believes and therefore alleges that the underwriter approved this loan based only upon a stated income and a medium to high risk credit score and a belief that the property would continue to increase in value and that the Plaintiff should have been declined for this loan.

39.  Plaintiff is informed and believes and therefore alleges that based on a Real Income Analysis, with the type of take home income Plaintiff possesses and that was clearly disclosed to

Defendants, that the borrower would not be able to support the home payment over an extended period.

40.   Plaintiff is informed and believes and therefore alleges that Defendants failed to provide Plaintiff with written notice of the furnishing of negative credit information to consumer reporting agency after Defendants furnished such negative credit information about Plaintiff.

41.   Plaintiff is informed and believes and therefore alleges that Defendants breached their fiduciary duty to Plaintiff because they knew or should have known that the Plaintiff would or had a strong likelihood of defaulting on this loan, they have a fiduciary duty to the Plaintiff to not place them in that loan (in harm's way).

42.   Plaintiff is informed and believes and therefore alleges that it was in the best interest of Aloha Mortgage Solutions and Countrywide Home Loans to promote the particular program for which they approved Plaintiff. It led to a maximization of profits for the Defendants, with no concern for the Plaintiff's financial position or livelihood.

43.   Plaintiff is informed and believes and therefore alleges that as a result of the Practices of Defendants, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

44.   Plaintiff is informed and believes and therefore alleges that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act.

45.   Plaintiff is informed and believes and therefore alleges that Defendants engaged in unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of the Unfair and Deceptive Acts and Practices statutes.

# COUNT I

## Declaratory Relief

### (Against All Defendants)

46.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

47.  An actual controversy has arisen and now exists between Plaintiff and Defendants regarding their respective rights and duties, in that Plaintiff contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations 3500.10, UDAP, TILA and RESPA.  Thus the purported power of sale by Defendants no longer applies.

48.  Plaintiff further contends that Defendants do not have the right to foreclose on the Subject Property because Defendants did not properly comply with proper delivery procedures under RESPA.  Plaintiff further contends that the Defendants perpetrated a fraudulent loan transaction.

49.  Plaintiff request that this Court find the purported power of sale contained in the Loan of no force and effect at this time, because Defendants actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants.  Plaintiff further request that title to the Subject Property remain in Plaintiff's name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation.

50.  As a result of the Defendants' actions, Plaintiff has suffered damages according to proof, and seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property.

51.  Further, Defendants' actions have been willful, knowing and malicious.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT II

### Injunctive Relief

### (Against All Defendants)

52.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

53.  Defendants have commenced a foreclosure action under the Note and have scheduled or will schedule a non-judicial sale. Said sale will cause Plaintiff great and irreparable injury in that real property is unique.

54.  The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of the property and will lose her home.

55.  Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it is and will be impossible for Plaintiff to determine the precise amount of damage Plaintiff will suffer.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT III

### Contractual Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

56.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

57.   Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.  The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose.  This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

58.   The terms of the Loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

59.   Defendants enjoyed substantial discretionary power affecting the rights of Plaintiff during the events alleged in this Complaint.  Defendants were required to exercise such power in good faith.

60.   Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiff when Defendants:

   I.   Willfully withheld numerous disclosures;

   II.   Willfully withheld notices in regard to excessive fees and closing costs; below standard and non-diligent underwriting standards, Disclosures of additional income due to interest rate increases, and failure to disclose when negative credit scores were disseminated; and charged fees in excess of the reasonable value of goods provided and/or services rendered;

III.   Willfully placed Plaintiff in a loan that she did not qualify for, could not

afford, and subjected them to further financial detriment, while providing

Defendants with financial benefits she would not have otherwise enjoyed.

61.   As a result of Defendants' breach of this covenant, Plaintiff has suffered injury and has caused Plaintiff the threat of loss of her home.  Plaintiff has incurred and continues to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

62.   Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT IV

### Violation of TILA, 15 U.S.C. § 1601, et.seq.

### (Against All Defendants)

63.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

64.   The Truth In Lending Act (TILA) applies because the transaction involves the extension of credit to a consumer for personal, family or household purposes that is subject to a finance charge and/or payable by written agreement in more than four installments per 15 U.S.C. §§ 1601-1666j.

65.   Aloha Mortgage Solutions and Countrywide Home Loans, failed to issue TILA initial disclosures as mandated. The failure to provide these disclosures would ensure that the Plaintiff had no idea what the loan she was being offered, or the details of the loan. The Plaintiff would then be place in a serious disadvantage as to getting a loan beneficial to their interest.

66.   Aloha Mortgage Solutions and Countrywide Home Loans, failed to provide Plaintiff with a, a properly disclosed interest rate, a payment schedule or a disclosure relating to Property hazard Insurance and Prepayment Penalty,  all required under the Code of Federal Regulations.

67.   Any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

68.   An actual controversy now exists between Plaintiff, who contends she has the right to rescind the loan on the Subject Property alleged in this Complaint, and based on information and belief, Defendants deny that right.

69.   As a direct and proximate result of Defendants' violations Plaintiff has incurred and continue to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

70.   Defendants were unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

71.   Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT V

### Violation of Real Estate Settlement and Procedures Act (RESPA)

### (Against All Defendants)

72.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

73.  RESPA applies because a lender that regularly extends federally related mortgage loans aggregating more than $1 million per year, and intended for the purchase of a one- to four-family residential property are subject to RESPA per 12 U.S.C. §§ 2601-2617.

74.  Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

(1) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

(2) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

75.  In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA.

76.  The fees for this loan were equally egregious. This loan required the Plaintiff to    pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

77.  Defendants, and each of them, did not inform the borrower of intention to transfer the servicing of the loan and/or failed to inform the borrower of the actual transfer within fifteen (15) days before the effective date of the transfer per RESPA of *24 C.F.R. § 3500.21.*

78.  The Defendants, and each of them, did not provide HUD-1 at closing (or 1 day before if requested) and accurate per RESPA of *24 C.F.R. § 3500.8(b).*

79.  Defendants, and each of them, did not provide Purchase Money or provide the Special Information Booklet explaining the settlement costs within three (3) business days after consumer submitted a loan application. This is a violation under RESPA of *24 C.F.R. § 3500.6.*

80.   This loan had fees charged in excess of the reasonable value of goods provided and/or services rendered.  This is a violation under RESPA of *24 C.F.R. § 3500.16.*

81.   As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT VI

### Rescission

### (Against All Defendants)

82.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

83.   Plaintiff is entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) RESPA; 3) Fraudulent Concealment; 4) Deceptive Acts and Practices (UDAP) and 5) Public Policy Grounds, each of which provides independent grounds for relief.

84.   The Truth In Lending Act, 15 U.S.C §1601, et.seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Plaintiff's right to rescind.  Here, Defendants have failed to properly disclose the details of the loan.  Specifically, the initial disclosures do not initial TIL disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiff in a loan she could not afford and would ultimately benefit Defendants following the negative amortization that accrued.

85.   The public interest would be prejudiced by permitting the alleged contract to stand; Such action would regard an unscrupulous lender.

86.   As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff pray for rescission of the stated loan in its entirety.

## COUNT VII

### Unfair And Deceptive Business Act Practices (UDAP)

### (Against All Defendants)

87.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

88.   Defendants failed to undergo a diligent underwriting process for this loan an alleged in this complaint.  They also failed to properly adjust and disclose facts and circumstances relating to Plaintiff's mortgage loan and placed Plaintiff in a loan, by way of stated income and misleading facts, which she should never have been approved for because she could not afford it.  Defendants did have that knowledge of these facts, circumstances and risks but failed to disclose them. Defendants also used various rates and charges to disguise the actual payment schedule and loaned amount.  The Defendants enjoyed unjust enrichment and have profited and deceptively preyed upon Plaintiff and her naïve nature in the industry.

89.   By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said Defendant has violated the Unfair and Deceptive Acts and Practices by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiff of her home, equity, as well as her past and future investment.

90.   By reason of the foregoing, Plaintiff has suffered and continues to suffer damages in a sum which is, as yet unascertained.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT VIII

### Breach of Fiduciary Duty

### (Against Defendants)

91.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

92.   Defendants owed a fiduciary duty to Plaintiff and breached that duty by ailing to advise or notify Plaintiff when Defendant's broker knew or should have known that Plaintiff would or had a likelihood of defaulting on the loan, Defendants have a fiduciary duty to the borrower to not place them in that loan (in harm's way).

93.   Defendants have a fiduciary duty to the Plaintiff, however here, they exercised a greater level of loyalty to each other by providing each other with financial advantages under the loan without disclosing their relation to one another to Plaintiff.

94.   Defendant failed to provide material disclosures regarding the loan and its interest rate to Plaintiff while in the capacity of Plaintiff's Lender.

95.   Defendants failed to fully comply with TILA and RESPA regulations and laws designated to protect Plaintiff.   The failure to do so placed Plaintiff in a serious disadvantage and potential loss of her home.   Such actions are violations of a fiduciary responsibility owed to Plaintiff by Defendants.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT IX

### Unconscionability – UCC-2-3202

### (Against All Defendants)

96.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

97.   If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may

enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

98.  When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

99.  Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants were require to follow; coupled with the windfall that the Defendants reaped financially from their predatory practices upon Plaintiff's, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

WHEREFORE, Plaintiff pray for restitution and relief as set forth below.

## COUNT X

### Predatory Lending

### (Against All Defendants)

100.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

101.  The Office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in Unfair and Deceptive Business Practices.

102. Acts undertaken by the Defendants here that are consistent with the Office of the Comptroller's definition include the fact that this loan was marketed in a way which fails to fully disclose all material terms and includes terms and provisions which are unfair, fraudulent or unconscionable;

103. This loan is a high cost loan that violates the Homeownership and Equity Protection Act.

104. This loan is a practice of offering a loan at one rate and then changing the loan program at the last moment. It can also apply to the negative amortization loan.

105. This loan is a practice of targeting the elderly with loans that they cannot afford or negative amortization loans with low minimum payments, but high actual interest rates, simply for getting the commissions on the loan.

106. This loan targets inappropriate or excessively expensive credit products to older borrowers, to persons who are not financially sophisticated or who may be otherwise vulnerable to abusive practices, and to persons who could qualify for mainstream credit products and terms.

107. This loan is a practice of targeting persons who don't speak or read English well and all the conversations are held in either English or their native language. Borrowers cannot understand the loan documents and have no idea what they are signing.

108. This loan requires borrowers to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

109. This loan is the practice of approving loans with high debt ratios, usually 50% or more, without determining the true ability of the borrower to repay the loan. Can often be seen with Prime borrowers approved through the Automated Underwri0ting Systems.

110. The loan offered to the borrower has little or no equity in the home. Usually adjustable rate mortgages that the borrower will not be able to refinance out of when the rate adjusts dues to lack of equity.

111. This loan is marketed in a way that fails to fully disclose all material terms. Includes any terms or provisions which are unfair, fraudulent or unconscionable. Is marketed in whole or in

part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact. Includes interest only loans, adjustable rate loans, negative amortization and HOEPA loans.

112.   This loan is based on a loan application that is inappropriate for the borrower. For instance, the use of a stated-income loan application from an employed individual who has or can obtain pay stubs, W-2 forms and tax returns.

113.   This loan is underwritten without due diligence by the party originating the loan. No realistic means test for determining the ability to repay the loan. Lack of documentation of income or assets, job verification. Usually with Stated Income or No documentation loans, but can apply to full documentation loans.

114.   This loan is materially more expensive in terms of fees, charges and/or interest rates than alternative financing for which the borrower qualifies. Can include prime borrowers who are placed into subprime loans, negative or interest only loans. Loan terms whereby the borrower can never realistically repay the loan.

115.   This adjustable rate mortgage loan was an inter-temporal transaction on which Plaintiff had only qualified at the initial teaser fixed rate, and could not qualify for the loan once the interest rate terms changed in two years.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT XI

### Quiet Title

### (All Defendants Claiming Any Interest In the Subject Property)

116.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

117.  Plaintiff is at all times herein mentioned the owner and/or entitled to possession of the Property, until the date of sale that transferred physical possession of the deed of trust to the non-bonafide subsequent purchaser.

118.  Plaintiff is informed and therefore believes and thereupon alleges that Defendants, and each of them, claim an interest in the Subject Property adverse to Plaintiff.  However, as a result of the conduct more fully described in the preceding allegations, the claim of Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the Property.

119.  Plaintiff therefore seek a declaration that the title to the Subject Property is vested in Plaintiff's alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the Subject Property and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the Subject Property adverse to Plaintiff.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT XII

### Lack of Standing; Improper Fictitious Entity

### (Against Defendant MERS)

120.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

121.  Where a power to sell real property is given to a mortgagee, or other entity whom has placed an encumbrance on title, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

122. Mortgage Electronic Registration System (MERS) has been named the beneficiary for this loan. MERS was created to eliminate the need for the executing and recording of assignment of mortgages, with the idea that MERS would be the mortgagee of record. This would allow MERS to foreclose on the property, and at the same time, assist Aloha Mortgage Solutions in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved Aloha Mortgage Solutions money in manpower and the costs of recording these notes. It was also designed to "shield" investors from liability as a result of lender misconduct regarding the process of mortgage lending.

123. MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS "designated officer" has a conflict of interest.

124. Since neither MERS nor the servicer have a beneficial interest in the note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the Assignment in the name of MERS, the Assignment executed by the MERS employee is illegal. The actual owner of the note has not executed the Assignment to the new party. An assignment of a mortgage in the absences of the assignment and physical delivery of the note will result in a nullity.

125. It must also be noted that the lender or other holder of the note registers the loan on MERS. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system. MERS never acquires actual physical possession of the mortgage note, nor do they acquire any beneficial interest in the Note.

126. The existence of MERS indicated numerous violations of the Unfair and Deceptive Acts and Practices due to the conflicting nature and identity of the servicer and the beneficiary. Each of these practices was intentionally designed to mislead the borrower and benefit the lenders.

127.  One can only conclude after a reading of this section, that MERS has no legal standing to foreclose.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff will ask for the following for each Cause of Action sustained:

1.  For Compensatory Damages in an amount to be determined by proof at trial.

2.  For Special Damages in an amount to be determined by proof at trial.

3.  For General Damages in an amount to be determined by proof at trial.

4.  For Treble Damages in an amount to be determined by proof at trial.

5.  For Punitive Damages as against the individual Defendants.

6.  For Attorney's Fees and Costs of this action.

7.  For Declaratory Relief, including a declaration that Plaintiffs is the prevailing party.

8.  For an Injunction, enjoining any foreclosure proceeding on the Subject Property.

9.  For a judgment rescinding the Loan and Security Agreement and setting forth terms of restitution.

10. For a judgment ordering that the Defendants provide proof of authority to foreclose by producing the promissory note.

11. Quiet Title.

12. For any prejudgment or other interest according to law.

13. Any other and further relief that the Court considers just and proper.

March 31, 2011

PRO SE Vilma Capco-Parenas